United States District Court
Southern District of Texas
**ENTERED**
December 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| Bassam Abdallah, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | Case No. 4:22-cv-00976 |
| v. | § | |
| | § | |
| Life Time Fitness, Inc, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

This case stems from a slip and fall that occurred on the premises of Defendant, Life Time Fitness, Inc. ("Life Time"). Life Time filed a motion for summary judgment on Plaintiff Bassam Abdallah's ordinary negligence claim, premises liability claims and Life Time's breach of contract counterclaim. Dkt. 16. Abdallah requests leave to amend his complaint. Dkt. 18.

After carefully considering the motion, Abdallah's response, Dkt. 18, Life Time's reply, Dkt. 19, and the applicable law, it is recommended that Life Time's motion for summary judgment (Dkt. 16) be granted (1) with respect to Abdallah's negligence claims and affirmative defenses, and (2) on Life Time's counterclaim for breach of contract, but only on the element of breach. The Court further grants Abdallah's motion for leave to amend his complaint (Dkt. 18 at 1) to assert gross negligence.

## Background

Life Time is a membership-based fitness club that, among other things, offers exercise classes.  Dkt. 16 at 1.  Abdallah became a member in July 2017.  Dkt. 16-3 (DX-B).  As part of the onboarding process, Abdallah signed a Member Usage Agreement ("Agreement") in which he agreed not to sue Life Time for ordinary negligence.  *Id.*; Dkt. 16-5 at 8 (DX-D) (Abdallah testifying that he signed the Agreement).[1]

The Agreement contains two provisions with critical terms set out in bold, conspicuous type.  Section two, entitled "**ASSUMPTION OF THE RISK**," states:

> I understand that Risks and Injuries in the Use of Life Time Premises and Services (collectively, "Risks of Injury") **may be caused, in whole or part, by the ORDINARY NEGLIGENCE OF LIFE TIME**, me, Minor Member(s), Other Member(s), Guest(s) and/or other persons. **FULLY UNDERSTAND, AND VOLUNTARILY AND WILLINGLY ASSUME, THE RISKS OF INJURY.**

Dkt. 16-3 § 2(C).  Section three, labeled "**WAIVER OF LIABILITY**," states:

> I hereby voluntarily and forever **release and discharge Life Time from**, **covenant and agree not to sue Life Time for**, and **waive, any claims**, demands, actions, causes of action, debs, damages, losses, costs, fees, expenses or any other alleged liabilities or obligations of any kind or nature, whether known or unknown (collectively "Claims") **for any Injuries** to me ... in the Use of Life Time Premises and Services **which arise out of,**

---

[1] Although the Agreement identifies the member as "Sam Abdaolah," the parties do not dispute that this name refers to Abdallah.

**result from, or are caused by any Ordinary NEGLIGENCE
OF LIFE TIME** .....

Dkt. 16-3 § 3.   Section three also defines the term "Negligence Claims" to

include "negligent failure to warn of or remove a hazardous, unsafe, dangerous

or defective condition" and "negligent failure to provide or keep premises in a

reasonably safe condition." *Id.* § 3(A).  The provision also obligates the member

to "**pay all reasonable fees (including attorneys' fees), costs and
expenses incurred by Life Time**" defending against any negligence claim

asserted in breach of the Agreement.  *Id.* § 3(B).

After becoming a member, Abdallah participated in a yoga class at a Life

Time location in Houston.  Dkt. 16-5 at 10.  According to Abdallah, after the

class ended, but before the patrons dispersed, a Life Time employee sprayed

cleaning solution on the floor. *See id.* at 26.  Shortly after, Abdallah slipped

and fell on the wet floor, injuring his back, hip, and knee.  *See id.* at 28.  Life

Time allegedly left the wet floor unguarded, did not wipe down the area after

spraying, and failed to post warning signs or take any measures to prevent the

risk of falls in the high traffic area.  *See id.* at 11, 26.

Abdallah filed suit in Texas state court, claiming ordinary negligence,

premises liability, and vicarious liability.  Dkt. 16-2 (DX-A).  Life Time

subsequently removed the suit to this Court, invoking diversity jurisdiction.

Dkt 1.  Life Time alleged, as an affirmative defense, that Abdallah had waived

and released his negligence claims.  Dkt. 4 at 5-7 (sixth and twelfth defenses).

Interrelatedly, Life Time asserted a counterclaim that Abdallah breached the

Agreement's covenant not to sue by filing this suit.  *Id.* at 9-10.

Abdallah moved to strike Life Time's counterclaim, Dkt. 8, but the Court

denied his motion, Dkt. 15.  In his answer, Abdallah raised the affirmative

defenses of undue influence and unconscionability.  Dkt. 9 at 1.

Life Time subsequently filed a motion for summary judgment.  Dkt. 16.

Embedded in his response to that motion, Abdallah requested leave to amend

his complaint to include a gross negligence claim based on the same underlying

facts as his ordinary negligence claims.  Dkt. 18 at 1; *see also* Dkt. 19 at 1-2

(Life Time's objection to request for leave to amend).  The motions were filed

while discovery was still open and well before the pleading amendment

deadline.  Both deadlines have since passed.  *See* Dkt. 14.

## Legal Standard

Summary judgment is warranted if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine 'if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material if the issue it

addresses "could affect the outcome of the action."  *Dyer v. Houston*, 964 F.3d

374, 379-80 (5th Cir. 2020) (citing *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted). "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party …." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001). In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing] credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

## Analysis

### I.  Life Time is entitled to summary judgment on Abdallah's ordinary negligence and premises liability claims.

Life Time's sole basis for summary judgment on Abdallah's claims invokes its affirmative defense of "release, waiver of liability, and express assumption of the risk." *See* Dkt. 4 at 5-7; Dkt. 16. "When summary judgment is sought on an affirmative defense, as here, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'" *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  The burden then "shifts to the nonmovant to establish an issue of fact that warrants trial." *Id.* (quoting *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016).  As explained below, Abdallah waived and released his ordinary negligence and premises liability claims upon signing the Agreement.  He also failed to raise a fact issue on any defenses to enforcing the waiver and release provisions.  As a result, the Court should grant summary judgment to Life Time and dismiss Abdallah's ordinary negligence and premises liability claims.

### A.  Abdallah expressly waived and released these claims.

It is undisputed that the Agreement contains provisions that explicitly absolve Life Time of liability for Abdallah's injuries on its premises "which arise out of, result from, or are caused by any ordinary negligence of Life Time."

Dkt. 16-3 § 3 (emphasis omitted); *see also generally* Dkt. 18 (Abdallah not disputing the waiver as applied to ordinary negligence). Abdallah admits that he signed the Agreement when becoming a member of Life Time Fitness. *See* Dkt. 16-3 at 4 (signature); Dkt. 16-5 at 8 (conceding he signed the Agreement).

Though not addressed by Abdallah, Life Time's invocation of the contractual waiver and release provisions implicates Texas's fair notice doctrine. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508-09 (Tex. 1993). Under the doctrine, a pre-injury release must (1) satisfy the express negligence rule and (2) be conspicuous. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004). Failure to satisfy either requirement renders the provision unenforceable as a matter of law.[2] *Id.*

Here, the waiver and release provisions satisfy the express negligence rule because the parties stated their intent to preclude ordinary negligence claims with specificity within "the four corners of the contract." *Id.* In Sections two and three, Abdallah not only agreed to assume the risk of injury from Life Time's negligence, he also agreed to waive, release, and discharge all such claims. Dkt. 16-3 §§ 2-3.

---

[2] Abdallah has challenged the Agreement's validity by pleading the defenses of undue influence and unconscionability. *See* Dkt. 9 at 1 (answer). These defenses lack merit. *See infra* Part II.A.

The waiver and release provisions are also conspicuous because their bold letters and underlining "attract the attention of a reasonable person when he looks at it." *See Dresser Indus., Inc.*, 853 S.W.2d at 508 (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex. 1972)); *see also Reyes*, 134 S.W.3d at 192 ("Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself."). Under Texas law, the waiver and release provisions are enforceable.

By their terms, the waiver and release provisions apply to Abdallah's claims. The claims that Abdallah agreed to waive and release include "negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition" and "negligent failure to provide or keep premises in a reasonably safe condition ...." Dkt. 16-3 § 3(A). The Agreement thus bars both Abdallah's ordinary negligence and premises liability claims. Indeed, this Court enforced a near-identical waiver in a prior case against Life Time and rejected substantively similar tort claims. *See McClure v. Life Time Fitness, Inc.*, 2014 WL 6851942, at *4-5 (S.D. Tex. Dec. 3, 2014). Summary judgment is warranted for Life Time on these claims.

### B.   Abdallah's request for a continuance is denied.

Abdallah requested that this Court defer ruling on Life Time's motion for summary judgment until he deposed Life Time's corporate representative. Dkt. 18 at 1-2. Since that time, however, discovery has closed, and Abdallah

has not sought to amend his response with any new information.  *See* Dkt. 14. His request for a continuance is therefore moot.

Moreover, a continuance is inappropriate because Abdallah cannot show that additional discovery would have changed the result.  Abdallah implicitly invoked Fed. R. Civ. P. 56(d).  *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266-67 (5th Cir. 1991) (whenever a party states "its need for additional discovery," the party "is deemed to have invoked the rule").  Rule 56(d) requires a "show[ing] by affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d); *see also Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999) ("vague assertions that discovery will produce needed, but unspecified, facts" do not satisfy Rule 56(d)).  Abdallah failed to identify any facts that merited a continuance—nor could he.  As concluded above, the waiver and release provisions explicitly foreclose his negligence and premises liability claims.  Nothing gleaned from deposing Life Time's representative could have altered that conclusion.  There is no basis for a continuance.

## II.  **Abdallah breached the Agreement by filing this suit, and no evidence supports his affirmative defenses.**

Life Time filed a counterclaim asserting that Abdallah breached the Agreement by filing this suit.  Dkt. 4.  In his answer, Abdallah invoked the defenses of undue influence and unconscionability.  Dkt. 9.  Life Time now

seeks summary judgment on those affirmative defenses, as well as a "summary finding" that Abdallah breached his covenant not to sue. *See* Dkt. 16 at 14-19. Abdallah failed to raise an issue of fact on his affirmative defenses. And Life Time has conclusively established the breach element of its counterclaim.

## A.   Abdallah failed to raise a fact issue on his affirmative defenses.

Abdallah presents no evidence supporting his affirmative defenses of undue influence and unconscionability. Apart from raising the defenses in his answer, Abdallah does not mention them at all. *Compare* Dkt. 9, *with* Dkt 18. No genuine issue of material fact exists on these defenses.

First, no evidence supports Abdallah's undue influence defense. "[T]o prove undue influence, one must demonstrate that 'persuasion, entreaty, importunity, argument, intercession, and solicitation' were so strong as to 'subvert and overthrow the will of the person to whom they are directed.'" *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. 1980) (quoting *DeGrassi v. DeGrassi*, 533 S.W.2d 81, 85 (Tex. App.—Amarillo 1976, writ ref'd n.r.e.)). Here, Abdullah voluntarily signed the Agreement, which negates any undue influence. His own testimony reflects that he understood the Agreement and could have walked away. *See* Dkt. 16-5 at 10. There is no evidence that Life Time "coerced or unduly influenced [Abdullah] into executing the Agreement," which forecloses his attempt to invalidate the Agreement's covenant not to sue.

*See Crockett v. Humana Behavioral Health*, 2019 WL 13252485, at *5 (E.D. Tex. Apr. 15, 2019) (lack of this evidence warranted enforcing releases).

Second, Abdallah's unconscionability defense is meritless.  The unconscionability of a contractual provision depends on both its procedural and substantive aspects.  *See Ramirez v. 24 Hour Fitness USA, Inc.*, 2013 WL 2152113, at *3 (S.D. Tex. May 16, 2013); *Coonly v. Galves Residential Servs., Inc.*, 2013 WL 6022261, at *5 (Tex. App.—San Antonio 2013, no pet.) (both requirements must be shown).  Procedural unconscionability examines the "facts surrounding the bargaining process." *Ramirez*, 2013 WL 2152113 at *3.  To be procedurally unconscionable, "[t]he circumstances surrounding the negotiations must be shocking." *Id.* (quoting *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, no pet.)).  "Substantive unconscionability focuses on the fairness of the agreement itself and whether there existed legitimate commercial reasons to include the terms in question." *Id.* (citing *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App.—San Antonio 1996, no writ).

Life Time argues—and the Court agrees—that the non-negotiability of the Agreement does not make it procedurally unconscionable. *See* Dkt. 16 at 15-16; *Ramirez*, 2013 WL 2152113 at *5.  Abdallah admitted he had an opportunity to read the Agreement before signing it.  Dkt. 16-5 at 10.  Indeed, the Agreement instructs members to read its provisions carefully.  Dkt. 16-3

11

at 1.  And Abdallah admitted that he understood the Agreement and could have chosen to forgo signing it.  Dkt. 16-5 at 10.

The Agreement is also substantively fair because legitimate commercial reasons support it.  *See Ramirez*, 2013 WL 2152113, at *6 (inclusion of pre-injury release "does not make the contract so grossly one-sided as to be unconscionable").  Moreover, Texas courts authorize releases like Life Time's that satisfy the fair notice doctrine.  *See supra* Part I.A.  The record does not reflect—and Abdallah has not offered—any reason that the Agreement or the circumstances surrounding his assent would render the waiver and release unconscionable.  Life Time is entitled to summary judgment on Abdallah's undue influence and unconscionability defenses.

### B.    Life Time has established that Abdallah breached the Agreement by filing this suit.

In the introduction and prayer, Life Time's motion requests a "summary finding" that Abdallah breached the Agreement by filing this suit.  Dkt. 16 at 6, 19.  This refers to Life Time's breach-of-contract counterclaim, which has four elements: "(1) the existence of a valid contract; (2) [Life Time] performed or tendered performance as the contract required; (3) [Abdallah] breached the contract by failing to perform or tender performance as the contract required; and (4) [Life Time] sustained damages as a result of the breach."  *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018).

In addition to seeking a determination about Abdallah's "breach," Life Time alludes to its damages by asking the Court to defer resolving the amount of Life Time's "attorney's fees and costs." Dkt. 16 at 6. But this counterclaim has two more elements on which Life Time has not explicitly sought relief. *See Cruz v. Centene Corp.*, 2016 WL 3906293, at *2 (S.D. Tex. July 19, 2016) ("With respect to a claim on which the movant bears the burden at trial ... the movant bears the burden of conclusively establishing every element of that claim ...."). As a result, the Court construes Life Time's motion as a request for summary judgment solely with respect to breach—the third element of this counterclaim.

On that issue, Life Time has conclusively established that Abdallah breached the Agreement. When signing the Agreement, Abdallah expressly "covenant[ed] and agree[d] not to sue" Life Time for ordinary negligence, including any failure to "provide or keep premises in a reasonably safe condition ...." Dkt. 16-3 §§ 3, 3(A) (emphasis omitted). Abdallah then violated the Agreement by suing Life Time for negligence and premises liability. *See McClure*, 2014 WL 6851942, at *7 (granting summary judgment in favor of Life Time's counterclaim when plaintiff violated a near-identical release by filing the suit). Accordingly, this Court should grant summary judgment to Life Time on the breach element of its counterclaim.

### III.   **The Court grants Abdallah leave to assert a gross negligence claim.**

When responding to Life Time's motion, Abdallah sought leave to amend his pleading to assert a gross negligence claim.  Dkt. 18 at 1.  In reply, Life Time argued that Abdallah has acted in bad faith and unduly delayed his request, and that an amendment would prejudice Life Time.  Dkt. 19 at 1-2. But the relevant factors show that Abdallah should be granted leave to amend.

Because Abdallah sought leave to amend before the deadline expired, Fed. R. Civ. P. 15(a) governs his request.  Rule 15(a) "evinces a bias in favor of granting leave to amend." *Smith v. EMC Corp.*, 393 F.3d 590, 598 (5th Cir. 2004).  For this inquiry, courts consider five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies from previously allowed amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

#### A.   **Abdallah's gross negligence claim is not futile because it is plausible and not barred by the Agreement.**

Taking the last factor first, allowing Abdallah to assert gross negligence would not be futile.  Notably, Life Time does not challenge this factor.

Futility "mean[s] that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).  In this context, amendment would be futile if the waiver and release provisions foreclose the gross negligence claim or

14

Abdallah's proposed pleading fails to plausibly allege gross negligence. Neither contingency exists.

First, the Agreement's waiver and release does not apply to gross negligence. Although the Texas Supreme Court has not explicitly resolved this issue, its decisions have signaled that gross negligence waivers violate public policy. *See e.g., Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 230 (Tex. 2019) ("[P]re-injury releases for gross negligence may be void as a violation of public policy in the personal injury context."). In addition, a majority of the Texas courts of appeals have held that contractual pre-injury releases of ordinary negligence cannot defeat a gross negligence claim. *See Hill v. Fitness Int'l, LLC*, 2023 WL 2607646, at *9, 13 (Tex. App.— Fort Worth Mar. 23, 2023, no pet.) (listing the competing authorities and adopting the majority approach); s*ee also e.g., Brennan v. Kaufman*, 2021 WL 3729257, at *5 (Tex. App.—Houston [14th Dist.] Aug. 24, 2021, pet. denied) (collecting authorities). This Court has already sided with that majority. *See McClure v. Life Time Fitness, Inc.*, 2014 WL 6851942, at *5 (S.D. Tex. Dec. 3, 2014). Life Time offers no reason to deviate from *McClure*. The Agreement, therefore, does not bar Abdallah's gross negligence claim.

Second, Abdallah has plausibly stated a claim for gross negligence. In Texas, gross negligence has both (1) an objective component, demanding an "extreme degree of risk considering the probability and magnitude of the

potential harm to others" and (2) a subjective component, requiring actual awareness of that risk and proceeding with "conscious indifference to the rights, safety, or welfare of others." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (quoting *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001)).  Under the objective prong, "an extreme risk is 'not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.'" *Id.* (quoting *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)).  The subjective prong requires evidence, including circumstantial evidence, that the defendant did not care despite having actual knowledge of the peril.  *Id.*

In addition to reciting the elements of gross negligence, Abdallah's proposed pleading alleges that Life Time's employee "blatantly applied cleaning solution to the floor while patrons were just feet from him." *See* Dkt. 18-1 at 3.  The employee allegedly failed to wipe up the cleaning solution, leaving a slick surface in a high traffic area and without warning patrons of the danger.[3]  *Id.* at 2.  Abdallah then injured his back, hip, and knee when he slipped on this wet floor.  *Id.*

These allegations, if proved, support the objective prong of gross negligence because the wet floor posed an extreme degree of risk that was

---

[3] Indeed, video footage shows a Life Time employee carrying two spray bottles, dousing the floor with chemicals, and failing to wipe up any of it.  *See* Dkt. 18 at 6.

highly likely to occur, resulting in a high magnitude of injury. *See Minton v. Intercontinental Terminals Co.*, 2023 WL 6542106, at *4 (S.D. Tex. Oct. 5, 2023) ("Plaintiffs must show both an elevated likelihood of harm *and* that the magnitude of the harm was very substantial.").  Spraying a floor with liquid in a high-traffic area, and in close proximity to patrons, creates a high likelihood of falls, particularly when Life Time allegedly failed to warn about the hazard or undertake any effort to mitigate it. *See, e.g., Santisteven v. Braum's Inc.*, 2017 WL 673828, at *3 (E.D. Tex. Jan. 23, 2017) (gross negligence adequately pleaded when defendant mopped the floor in front of patrons without putting up warning signs), *adopted by* 2017 WL 568709 (E.D. Tex. Feb. 13, 2017); *Brazoria Cnty. v. Davenport*, 780 S.W.2d 827, 830 (Tex. App.—Houston [1st Dist.] 1989, no writ) ("accumulation of water on the sidewalk" created a "dangerous condition" sufficient to support a gross negligence claim).  Indeed, Abdallah fell soon after the employee sprayed the area. *See* Dkt. 16-5 at 26.

Sufficient factual allegations also support the subjective prong of gross negligence, *i.e.*, that Life Time knew of the risk and was consciously indifferent to the danger.  According to the allegations, Life Time's employee intentionally sprayed cleaning solution on the floor, creating the slippery surface. *See Hill v. Fitness Int'l, LLC*, 2023 WL 2607646, at *14 (Tex. App.—Fort Worth Mar. 23, 2023, no pet.) ("The owner's creating a condition that posed an unreasonable risk of harm may support an inference of knowledge.").  Yet Life

Time made no attempt to warn about or mitigate the hazard, which can indicate "conscious indifference." *See Winn–Dixie Texas, Inc. v. Buck*, 719 S.W.2d 251, 254 (Tex. App.—Fort Worth 1986, no writ) (evidence that "no effort was made to block off the area, put up a sign in the area, or to post someone at the area" was sufficient to show the defendant "did not care"). Based on the allegations, Abdallah's proposed gross negligence claim would not be futile.

## B. Life Time's arguments about the remaining factors are not persuasive.

The four remaining factors, on balance, also favor amendment. Life Time does not dispute that the third factor weighs in Abdallah's favor, as Abdallah has not repeatedly failed to cure any deficiencies. After all, this is Abdallah's first proposed amendment. Contrary to Life Time's contentions, the other factors—undue delay, bad faith or dilatory motive, and undue prejudice—provide no "substantial reason" to deny Abdallah leave to amend. *See Stem v. Gomez*, 813 F.3d 205, 215 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).

### 1. The timing of Abdallah's request does not show undue delay or bad faith.

As Life Time correctly notes, Abdallah requested leave to amend in response to Life Time's motion for summary judgment, more than a year after the case was removed. Dkt. 19 at 1-2. Life Time argues that this delay was undue, evincing Abdallah's dilatory motive to avoid summary judgment. *Id.*

18

Life Time misconstrues what constitutes undue delay. To meet that threshold, a delay "must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). But Abdallah's proposed amendment would neither overly burden the Court nor prejudice Life Time. *See infra* Part III.B.2. The Court cannot "punish" Abdallah "[m]erely because [his] claim was not presented as promptly as possible." *See Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982). In any event, delay alone cannot justify denying leave to amend. *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018).

As for bad faith, the Court finds no dilatory motive. Although Abdallah sought leave in response to a motion for summary judgment, the record does not indicate that he did so for an improper purpose. *See* Dkt. 19 at 1-2. Life Time filed its motion for summary judgment early in the discovery period, months before the deadline for amending pleadings had expired. *Compare* Dkt. 16 (filed March 29, 2023), *with* Dkt. 14 (June 30, 2023 deadline). *See also Doe v. El Paso Cnty. Hosp. Dist.*, 2015 WL 11598707, at *3 (W.D. Tex. July 17, 2015) (granting leave to file third amended complaint where defendant moved for summary judgment before discovery closed, finding no undue delay). The mere fact that Abdallah raised his request in response to a summary judgment motion does not indicate that he acted in bad faith. *See, e.g., Bamm, Inc. v.*

19

*GAF Corp.*, 651 F.2d 389, 391-92 (5th Cir. 1981) (reversing denial of leave to amend sought before discovery closed but after partial summary judgment was granted, when the new theories involved the same underlying transaction).

Life Time also argues that Abdallah had all the relevant facts when he filed the case, and his failure to assert them earlier indicates bad faith.  Dkt 19 at 1-2.  This is an overstatement.  For example, until discovery, Abdallah did not have the security video. *See* Dkt. 16-5 at 28.  The video shows a Life Time employee spraying the floor with two bottles, without using or even holding a rag to dry the surface.  *See* Dkt. 18 at 6.

Regardless, Life Time's cited authorities are distinguishable.  *See* Dkt. 19 at 2.  Some of those decisions found that other factors weighed heavily against amendment.  *See Martin's Herend Imps., Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770-71 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 141-42 (5th Cir. 1993).  Others involved motions for leave sought after a summary judgment ruling had resolved the whole case, *see Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986), or months after the deadline for amending pleadings had expired, *see Quirk v. Life Time Fitness, Inc.*, 2011 WL 13324302, at *1 (W.D. Tex. Apr. 8, 2011).  And even if Life Time's cases were apposite, they merely signal that a district court *could* properly exercise its discretion to deny leave to amend under certain circumstances, rather than establishing a rule foreclosing amendment.

On this record, the Court concludes that Abdullah has not unduly delayed his request or acted in bad faith. *See Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 420 (5th Cir. 2013). These first two factors support his request for leave to amend.

### 2. Potential prejudice to Abdallah outweighs any minimal prejudice to Life Time.

Life Time does not explicitly invoke the fourth factor—undue prejudice. Life Time does assert that "no discovery was done on gross negligence, and [Abdallah] was not asked about it in deposition." Dkt. 19 at 1. But Life Time fails to explain why more discovery would be needed.

The Court concludes that prejudice to Life Time, if any, would be minimal because Abdallah's gross negligence claim involves the same underlying facts as his ordinary negligence claim. *See Valdez v. Cap. Mgmt. Servs., LP.*, 2010 WL 11665010, at *4-5 (S.D. Tex. Aug. 20, 2010) (granting leave to amend where the amendment arose out of the same underlying events as the original claim). Contrary to Life Time's contention, no new discovery would be required (or permitted). Particularly untenable is Life Time's complaint that it would need further discovery *from Abdallah*. *See* Dkt. 19 at 1-2. This argument ignores that the gross negligence hinges on *Life Time's own conduct and state of mind*—facts uniquely within its own knowledge and

control.  Life Time cannot credibly maintain that gross negligence would entail more discovery from Abdallah.

On the other hand, Abdallah would be greatly prejudiced if the Court denied his leave to amend.  This a proper consideration.  *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (courts can "weigh in the movant's favor any prejudice that will arise from denial of leave to amend").  Abdallah contractually released his ordinary negligence and premises liability claims, but the same release does not foreclose his proposed gross negligence claim.  *See supra* Part III.A.  Denial of leave therefore would be "unduly harsh" because it would "effectively end[] the case."  *See Reyna v. Flashtax, Inc.*, 162 F.R.D. 530, 532-33 (S.D. Tex. 1995).

Based on the record, all five factors support Abdallah's request for leave to amend.  Tilting the balance even further in his favor is Rule 15(a)'s bias favoring amendment.  The Court therefore grants Abdallah leave to raise a gross negligence claim.

## <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Defendant Life Time Fitness, Inc.'s motion for summary judgment (Dkt. 16) be **GRANTED** as follows:

- Summary judgment should be **GRANTED** as to Abdallah's ordinary negligence and premises liability claims, as well as his

affirmative defenses of undue influence and unconscionability. Those claims and defenses should be **DISMISSED**.

- Summary judgment should be **GRANTED** on the breach element of Life Time's counterclaim for breach of contract.

It is further **ORDERED** that Plaintiff Bassam Abdallah's request for leave to file a First Amended Complaint that adds a gross negligence claim (Dkt. 18 at 1) is **GRANTED**. Plaintiff must file his First Amended Complaint **no later than December 19, 2023.**

For clarity, and assuming that Abdallah timely files his amended complaint, his claim for gross negligence would remain pending. In addition, based on this Memorandum and Recommendation, all elements of Life Time's counterclaim other than breach would remain unresolved.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on December 7, 2023, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge

23